Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:09-bk-20649 |
| GREGORY WARD THAXTON and PAMELA GAY THAXTON, | CHAPTER 13 |
| Debtors. | JUDGE FRANK W. VOLK |

## MEMORANDUM OPINION AND ORDER GRANTING THE ALLOWANCE OF THE INTERNAL REVENUE SERVICE TO COLLECT 941 TAXES POST-DISCHARGE

Pending is Debtors' Request to Determine if the Internal Revenue Service May Collect any Interest on the Responsible Officer Assessment of 941 Taxes Post-Discharge. [Dckt. No. 254].

### I.

On June 17, 2009, Gregory Ward Thaxton and Pamela Gay Thaxton (collectively the "Thaxtons") petitioned for relief under Chapter 13 of the Bankruptcy Code. Gregory Ward Thaxton ("Mr. Thaxton") owned and operated two construction remodeling businesses prior to the petition. He sold the businesses on May 26, 2007. On August 12, 2009, the Internal Revenue Service (the "Service") filed a Proof of Claim, Claim No. 8, pursuant to 11 U.S.C. § 507(a)(8) instituting a priority tax claim. [Dckt. No. 57: Proof of Claim 8-1]. Claim No. 8 asserts individual

liability against the Thaxtons for unpaid trust fund taxes for the periods ending on March 31 and June 30, 2007, in the amount of $34,797.75, collectively $69,595.50. *Id*. By Agreed Order, dated September 22, 2009, the parties stipulated to joint liability of one allowed priority tax claim totaling $34,797.75, payable to the Service. [Dckt. No. 82]. The Agreed Order clarified the Service's intent to collect the unpaid taxes only once while also reflecting that the Thaxtons were jointly and severally liable on the obligation.

Absent objection, the Thaxton's Amended Chapter 13 Plan was confirmed by Order on July 8, 2011. [Dckt. No. 193]. The Confirmation Order provides for payment in full of the Service's $34,797.75 allowed priority tax claim. *Id*. Monthly payments were made by the Chapter 13 Trustee in the amount of $579.39 over the 60-month life of the plan and ensured full payment of Claim No. 8. [Dckt. No. 278]. Consistent with §502(a)(2), the Confirmed Amended Chapter 13 Plan did not include post-petition interest on Claim No. 8.

The Thaxtons made all required payments under the confirmed Amended Chapter 13 Plan and filed affidavits of plan completion and requests for discharge in March 2016. [Dckt. No. 236 and 237]. Absent objection, the Court entered an Order of Discharge on April 5, 2016. [Dckt. No. 242]. On June 1, 2016, the Chapter 13 Trustee submitted the Final Report and Account of Completed Case, identifying Claim No. 8 as paid in full and attesting that "the estate has been fully administered." [Dckt. No. 244].

On May 2, 2016, the Service mailed Mr. Thaxton two Notices of Intent to Levy. The first notice stated "[a]s [the Internal Revenue Service] notified you before, our records show you have unpaid taxes for the year ending March 31, 2007" in the amount of $590.43. [Dckt. No. 254]. The second notice stated "[a]s [the Internal Revenue Service] notified you before, our records show you have unpaid taxes for the year ending June 30, 2007" in the amount of $3,057.76. [Dckt.

No. 254]. The notices contained the following language: "If you don't pay by May 12, 2016, we may seize ("levy") your property or rights to property (including any state tax refunds)." The Service did in fact levy Mr. Thaxton's 2015 state tax refund. By letter dated May 2, 2016, the Service informed Mr. Thaxton that $1,660 of his 2015 tax return was applied to the balance of his outstanding 2007 taxes. [Dckt. No. 254].

On August 18, 2016, the Thaxtons moved for a determination of whether the Service may collect interest on the responsible officer assessment of 941 taxes post-discharge. [Dckt. No. 254]. They argue that the Service's priority tax claim, Claim No. 8, was paid in full upon completion of the Chapter 13 Plan, as signified by the Order of Discharge. The Thaxtons emphasize the predecessor judicial officer's statement during the confirmation hearing that the Thaxtons' proposed plan treated the Service as "fully paid." The Service responds that trust fund recovery penalty taxes, and certainly post-petition interest accruing thereon, are nondischargeable, even upon successful completion of a Chapter 13 plan. [Dckt. No. 257].

## II.

A. **Governing Standard**

Discharge of a Chapter 13 debtor is governed by 11 U.S.C. §1328 of the Bankruptcy Code. Section 1328(a)(2) provides, in relevant part, that "after completion by the debtor of all payments under than plan," the court shall "grant the debtor a discharge of all debts provided for by the plan or disallowed under [§] 502 of this title, *except* any debt … of the kind specified in [§] 507(a)(8)(C) or in paragraph (1)(b), (1)(C), (2), (3), (4), (5), (8), or (9) of [§]523(a)." 11 U.S.C.A. § 1328(a)(2) (West 2005). The debts identified as exempt in § 507(a)(8)(C) are "allowed unsecured

3

claims of governmental units, only to the extent that such claims are for … a tax required to be collected or withheld and for which the debtor is liable in whatever capacity[.]" 11 U.S.C. § 507(a)(8)(C).

The circumstances here indicate the obligation owed by the Thaxtons is in the nature of post-petition, or "unmatured" interest inasmuch as it accrued on their obligation to the Service during the pendency of the plan. Title 11 U.S.C. § 502 provides pertinently as follows:

> (a) A claim or interest, proof of which is filed under [§] 501 of this title, is deemed allowed . . .
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
> . . . .
>
> (2) Such claim is for unmatured interest[.]

11 U.S.C.A. § 502 (a) and (b)(2) (West 2005). A Chapter 13 plan must thus provide for payment in full of an allowed priority tax claim, without post-petition interest. Section 502(b)(2), however, does not mean that interest ceases to accrue or that a debtor is exonerated therefrom. Rather, post-petition interest accrues outside the Chapter 13 plan and the debtor remains personally liable therefor post discharge. *See* 11 U.S.C.A. § 1328(a)(2) (West 2005); *see, e.g., Bruning v. United States*, 376 U.S. 358, 361 (1964); *In re Kirkland*, 600 F.3d 310, 316 (4th Cir. 2010).[1]

---

[1] The *In re Kirkland* case involved a lower court determination that jurisdiction existed to determine the post-petition interest and collection costs to which a creditor was entitled as the result of a default on a student loan that occurred after the Chapter 13 estate was closed and the debtor discharged. The Court of Appeals concluded that the bankruptcy court lacked subject matter jurisdiction to adjudicate the matter.

This matter is distinguishable for several reasons from *In re Kirkland*. Foremost, the Court is not asked, and does not adjudicate, "whether or how much post-petition interest" is owed to the Service pursuant to statute. *In re Kirkland*, 600 F.3d at 318. Instead, the central issue raised by the

A fine discussion of the matter is found in a decision of the United States Court of Appeals for the Eighth Circuit:

> Taken together, sections 502 and 523 simply demonstrate Congress' intent to codify the general principle that applied under *Bruning*. Postpetition interest is disallowed against the bankruptcy estate under section 502. Priority tax claims remain nondischargeable for individual debtors. Under both the Act and the Code, Congress attempted to balance the interests of the debtor, creditors and the government, and in the instance of taxes and interest on such, Congress has determined that the problems of financing the government override granting debtors a wholly fresh start. H.R.Rep. No. 595, 95th Cong., 2d Sess. at 274 (1978), *reprinted in* 1978 U.S.Code Cong. and Admin.News 5963, 6231. Thus, postpetition interest is nondischargeable, and the [debtor] remain[s] personally liable for that interest subsequent to bankruptcy proceedings.

*In re Hanna*, 872 F.2d 829, 831 (8th Cir. 1989); *Johnson v. Internal Revenue Serv.* 146 F.3d 252, 260 (5th Cir. 1998). Our Court of Appeals is in accord. *See In re Kielisch*, 258 F.3d 315, 321–22 (4th Cir. 2001).

**B.     Analysis**

The Thaxtons contend in essence that a confluence of (1) the presiding judge's statement at the June 14, 2011, confirmation hearing concerning the "fully paid" nature of Claim No. 8, and (2) the Service's failure to object to such treatment are sufficient, in combination, to release their personal liability for post-petition interest. In support, counsel creatively references by analogy *In re Espinosa*. *In re Espinosa* involved a Chapter 13 debtor who filed a plan providing for payment of only the principal of his nondischargable student loans and explicitly stating that

---

Thaxtons is whether their plan, the confirmation order, and the presiding bankruptcy judge's comments during a hearing somehow exonerated them from paying post-petition interest. That determination arises in or, at a minimum is related to, the bankruptcy proceeding.

5

the remainder, the accrued interest, would be discharged. *In re Espinosa*, 599 U.S. 260, 264 (2007). The plan was confirmed absent objection by the student loan creditor. The Supreme Court held, "[w]here, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate . . ." *Id*. at 276.

The decision in *In re Espinosa*, however, stands in sharp contrast to the circumstances presented here. The Thaxtons controversy at confirmation involved only their desire to pay Service's claim once, in the amount of $34,797.75, and not that same amount twice as to both debtors. The peril of double collection was then resolved by agreed order. Consistent with the Agreed Order, the order of confirmation provided for payment in full of the Service's claim in the amount of $34,797.75, with no mention of interest, which would have been nondischargeable in any event inasmuch as it would be accruing postpetition.

The Thaxtons did not propose any alternative treatment of Claim No. 8. They made no mention of their intent to pay only the principal of the claim. They also did not tender a clear, open and explicit statement that interest accrued post-petition would be discharged. Further, the predecessor judicial officer's stray observation that the Chapter 13 plan treats the Service's claim as "fully paid" does not approach the type of an express statement of discharge that would suffice under *In re Espinosa*. Cast in that fashion, this matter more closely approximates the decision in *In re Monahan*, 497 B.R. 642, 652 (1st Cir. BAP 2013):

> Application of *Espinosa*, and the cases applying that decision, to the facts of this case yields the conclusion that the terms of the Amended Plan did not provide for the discharge of the priority tax claim. The Amended Plan only provided for the payment in full of the priority tax claim, as it was required to do under § 1322(a)(2). In the absence of language clearly providing for a discharge of the priority tax claim for so-called trust fund taxes, the debtor failed to give the IRS the clear, open, and unambiguous notice of any intent to discharge such claim which the decision in *Espinosa* and due process requires. In the absence of such notice,

6

>   the priority claim remains nondischargeable under the provisions of § 1328(a)(2) .
>   . . . Because the discharge injunction does not apply to nondischargeable debts, we
>   conclude that the bankruptcy court erred when it determined that the IRS's
>   collection efforts violated the discharge injunction.

*In re Monahan*, 497 B.R. 642, 652 (1st Cir. BAP 2013).

It is, accordingly, **ORDERED** that the relief requested by the Thaxtons be, and hereby is, **DENIED**.